## John S. Hayward, Administrator &c. *versus* The Pilgrim Society.

Certain persons were incorporated for the purpose of erecting a monument and a suitable building for their meetings, and were empowered to make by-laws for the reg llation of the society, and to choose such officers as they should think expedient; and their by-laws provided for the election of a treasurer and trustees, and required the trustees to manage the finances and property of the society and to exhibit the state of the treasury annually. The society voted that the trustees proceed in appropriating the funds of the society in erecting a suitable edifice, and the trustees thereupon entered into a contract for that purpose, and when they had exhausted all the funds of the society there remained a debt for which they were personally responsible. In their annual exhibit they reported this debt as due from the society, and the report was accepted by the society and ordered to be recorded *Held*, that this was a ratification of the acts of the trustees and an assumption of the debt ; and that it created an obligation on the part of the society to reimburse them in case of their being compelled to pay the debt.

*Held* also, that the trustees, in virtue of their authority to manage the finances and property of the society, had power to bind the society by a promissory note, through the agency of their treasurer, or by such other obligations as are ordinarily resorted to in managing the finances of such institutions.

*Held* also, that the trustees might lawfully change the liability of the society, by creating one debt to pay another, whenever in their opinion it became necessary or expedient.

The trustees having voted that the treasurer should give a note to one of their number, who had paid a debt due from the society, without limiting the time in which the authority was to be exercised, it was *held*, that he might make the note several years afterwards, the claim not being then barred by lapse of time.

A misrecital in such note, that it was given in pursuance of a vote of the society, (instead of a vote of the trustees,) was *held* to be immaterial.

*Held* also, that the original memoranda or minutes of the proceedings of the trustees, made at the time by one of them by the authority of the board, were competent evidence to prove that they had empowered the treasurer to give such note ; especially after the trustee who made the entries was deceased.

Assumpsit on a promissory note, as follows : " Plymouth, 3d January, 1831. Value received, the Pilgrim Society, by their treasurer for the time being, being authorized so to do by a vote of said society passed January 24th, 1826, promises to pay to John S. Hayward, administrator to the estate of Beza Hayward Esq. deceased, or order, one nundred seventy-six $\frac{67}{100}$ dollars, with interest from the 22d December, 1826, until paid. I. L. Hedge, Treasurer."

At the trial, before *Dewey* J., the signature of Hedge, as treasurer, was admitted ; also that he was the treasurer at the time of executing the note.

The plaintiff did not produce any vote of the Pilgrim Society directly authorizing the making of this note, but he offered in evidence the act of the legislature incorporating the defendants, certain votes contained in their book of records, and the constitution or by-laws of the society.

The act of incorporation (*St.* 1819, *c.* 71) provides, that certain persons named, together with such others as may be associated with them "for the purpose of procuring in the town of Plymouth a suitable lot or plat of ground for the erection of a monument to perpetuate the memory of the virtues, the enterprise and unparalleled sufferings of their ancestors, who first settled in that ancient town, and for the erection of a suitable building for the accommodation of the meetings of said associates," be "incorporated into a society by the name of the Pilgrim Society," with power " to make contracts relative to the object of their institution, to sue and be sued, to establish by-laws for the regulation of the society, to choose a president, and such other officers as may be thought expedient."

The sixth by-law is, " There shall be a treasurer, who shall give bond for the faithful discharge of his trust, shall receive and preserve all evidences of property, shall pay out moneys only to the order of the trustees, keep a fair account of all his doings, and annually exhibit and settle his books with the trustees, in the month of May, previous to the annual meeting." The seventh is, " There shall be a board of nine trustees, not less than three of whom shall constitute a quorum for doing business. They shall manage the finances and property of the society, solicit and procure funds for the objects of the institution, settle and exhibit the state of the treasury annually in the month of May."

At a meeting of the society on the 10th of September, 1821, it was resolved, " that the trustees should proceed immediately in appropriating the funds of the society in erecting a suitable edifice for the future celebrations ; " " that the surplus of the society's funds, after effecting the aforesaid object, be applied to the erection of a suitable monument ; " and " that the trustees be requested to appoint a suitable person or persons to collect forthwith the sums subscribed, to solicit other subscrip

Hayward
*v.*
The Pilgrim
Society.

tions, and that he or they be paid out of the funds of the society."

At a meeting of the society on the 23d of December, 1822, it was voted, " that the trustees, at the adjourned meeting, be requested to exhibit to the society a plan or plans of a suitable building, and the probable expense of building and lot on the respective plans proposed."

An agreement was made on the 15th of June, 1824, signed by Beza Hayward and five others as trustees, of the one part, and Abner S. Taylor and Jacob Taylor, of the other part, by which the Taylors covenanted to erect a building on a lot of land owned by the society, and in consideration of the performance of this covenant the trustees covenanted to pay them the sum of $5300, in instalments ; and by a writing under date of the 30th of December, 1824, the Taylors acknowledge the receipt of drafts of the trustees on the treasurer for $4300, leaving $1000 due, with interest from the 22d of the same December."

At the fifth annual meeting of the society, holden on the 30th of May, 1825, the trustees made a report, stating that they had settled the account of the treasurer, and that there was due to the Taylors, payable on the 22d of December, 1825, on the contract, $1000, and one year's interest, $60, amounting to $1060 ; which report was "accepted and ordered o be recorded."

On the 22d of December, 1825, Beza Hayward paid on the contract, the sum of $176·67, " being one sixth part of the principal and interest due on the within bond." The note in suit was given for the sum so paid.

Beza Hayward was chosen a trustee on the 31st of May, 1824, and continued a trustee until May, 1830. He died on the 18th of November, 1830.

In a book of records kept by the trustees, the entries in which were made by one of them, is an entry attested by Z. Bartlett, one of them, as clerk, that, at a meeting of the trustees on the 24th of January, 1826, Zabdiel Sampson was chosen moderator, and that it was voted, that Isaac L. Hedge, treasurer of the society, be authorized and required to give his note on demand, with interest from the 22d day of August,

1825, to each person who has paid or may pay his one sixth part of the thousand and sixty dollars, due on the contract with Jacob and Abner S. Taylor for building Pilgrim Hall. Voted, that the treasurer be required to take up the note of Jacob and Abner S. Taylor, due to Plymouth Bank, for $530, by giving his note to said bank, indorsed by Zabdiel Sampson, Josiah Robbins and Zaccheus Bartlett, on interest, payable in one year " It appeared by the records of the trustees, that Bartlett was chosen their clerk on the 18th of November, 1823. At the time of the trial of this action he was deceased.

The defendants contended, 1. That no authority had been given to the treasurer to sign the note in suit. 2. That the supposed authority could not have been legally executed in 1831, being five years subsequent to the vote of the trustees, and all the officers being chosen annually. 3. That the note purports to have been made by authority of the Pilgrim Society, by their vote of January 24, 1826, whereas it was by authority of a vote of the trustees only. 4. That there was no such vote of the trustees adopted by a majority of the trustees. 5. That the trustees had not a legal clerk, and were not authorized to keep a book of records. 6. That the trustees had no authority to pass any vote empowering the treasurer to execute the note. 7. That the liability of Beza Hayward was assumed without any request on the part of the defendants, and without any expectation of recourse to them.

If the Court should be of opinion, that upon the evidence in the case the plaintiff was entitled to maintain his action, the defendants were to be defaulted ; otherwise the plaintiff was to be nonsuit.

*Oct. 24th.*

*W. Thomas,* for the plaintiff, cited to the point, that the trustees had authority to direct the note to be given, *Meade* v. *M'Dowell,* 5 Binney, 195 ; *Andover* v. *Grafton,* 7 N. Hampsh. R. 298 ; *Episcopal Charitable Society* v. *Episcopal Church in Dedham,* 1 Pick. 372 ; and to the point, that the records or minutes of the trustees were competent evidence of their acts, 1 Stark. Evid. (Metcalf's ed.) 47, 48, 49, 307.

*Loud,* for the defendants, cited to the point, that the trustees were not authorized to subject the society to a debt, *Tripp* v. *Swanzey Paper Co.* 13 Pick. 293; *Kupfer* v. *South Parish*

Hayward
v.
The Pilgrim
Society.

in *Augusta*, 12 Mass. R. 185 ; to the point, that they were not authorized to change the form of the debt and bind the society by a promissory note, thus postponing the operation of the statute of limitations, *Wyman* v. *Hallowell and Augusta Bank*, 14 Mass. R. 58 ; and to the point, that the memoranda, called the records of the trustees, were not competent evidence, *Highland Turnpike Co.* v. *M'Kean*, 10 Johns. R. 154.

*May term*
1839,
*at Plymouth.*

MORTON J. delivered the opinion of the Court. This action is founded upon a promissory note purporting to be given by the treasurer of the Pilgrim Society for that corporation and by the authority of a vote passed on the 24th of January, 1826. As no such vote was ever passed, it is manifest that the note cannot, upon that ground, be deemed the contract of the society. The recital in the note, of the vote under which the treasurer acted, will not preclude competent evidence that he had other lawful authority. It is mere matter of description, and not of the essence of the contract. And the effect of introducing other proof will not be to control or vary the legal import of the written agreement of the parties.

It will therefore be necessary to examine into the consideration of the note and the origin of the debt for which it was given. It appears from the report of the trial, that the Pilgrim Society was incorporated for the purpose of erecting " a monument to perpetuate the memory of the virtues, the enterprise and unparalleled sufferings of their ancestors," and " a suitable building for the accommodation of the meetings " of the society. There can therefore be no doubt of the authority of the corporation to construct such monument and building ; to take all necessary means for these purposes ; to employ suitable agents to perform the necessary services, and to incur debts in the accomplishment of their objects.

The corporation were also authorized to make " by-laws for the regulation of the society," and to choose such " officers as may be thought expedient." The by-laws or constitution of the society provide for the election of a treasurer and board of trustees ; and prescribe their respective duties. The trustees are required " to manage the finances and property of the society " and " to settle and exhibit the state of the treasury annually."

In September, 1821, the trustees were authorized and required to " proceed immediately in appropriating the funds of the society in erecting a suitable edifice for the future celebrations." The trustees were also authorized to appoint an agent to collect the subscriptions already made, and to solicit further subscriptions for the purpose of defraying the expense of such building, and the surplus to be applied towards a monument afterwards to be erected.

It is very obvious, that the votes of this meeting did not authorize the trustees to incur any debt to be charged upon the society. Their power extended only to the application of the funds already raised and to be raised by subscription. *Kupfer* v. *South Parish in Augusta,* 12 Mass. R. 185.

The trustees proceeded in the erection of an edifice, making personal contracts for the purpose, and when they had exhausted all the funds of the society, they found a deficiency of $ 1060, for which they were personally responsible. As they had gratuitously, faithfully and acceptably performed these services, there could be no reason why they should sustain this pecuniary loss. And as the corporation had the benefit of the whole expenditure, upon a building which had become their property, justice required that they should relieve their officers from this burden. They clearly had power to assume the debt.

The trustees, though personally liable, had considered and treated this as the debt of the society. And in their annual " exhibit " of the state of the treasury, made on May 30th, 1825, reported as due from the society to " Jacob and A. S. Taylor, payable December 22, 1825, on the contract $ 1000, and one year's interest, $ 60, — $ 1060." At the annual meeting of the Pilgrim Society, holden on the same day, this report was " accepted and ordered to be recorded." This amounted to a ratification of the acts of the trustees and an assumption of this balance due to the Taylors. This debt henceforth became the proper debt of the corporation. And although this adoption did not relieve the trustees from their personal liability, yet it created an obligation on the part of the society to indemnify them ; and should they be compelled to pay, to reimburse them. *The Episcopal Charitable Society* v. *The Episcopal Church in Dedham,* 1 Pick. 372.

Hayward
v.
The Pilgrim
Society.

The trustees, in virtue of their authority to "manage the finances and property of the society," by necessary implication had power to bind the society by notes and such other obligations as are ordinarily resorted to in managing the finances of such institutions.    The proper mode of doing this was through the agency of their fiscal officer, the treasurer.

When the plaintiff's intestate paid a portion of the debt due to the Taylors, by the direction of the trustees, he immediately became the creditor of the society and had a legal claim against them.    There can be no doubt that the trustees might lawfully change the liability of the society by creating one debt to pay another, whenever in their opinion it became necessary or expedient.    The note given by the treasurer and indorsed by Sampson, Robbins and Bartlett, by the request of the trustees, in discharge of a debt due the Taylors, immediately became the note of the society.    So, had the treasurer at the same time made a note to Beza Hayward, in pursuance of the vote of the trustees to that effect, it cannot be doubted that it would have been valid against the society.    The neglect to exercise this power for several years, though it may be evidence indicating a payment or discharge of the demand, we think cannot invalidate a power which in its creation was not limited to any definite period, or to be exercised by the officer of any particular year, but was in its nature prospective.    It is true, five years had elapsed, but the debt remained and the society had suffered nothing by the delay.    Had the debt been barred by the statute of limitations, it might have presented a different question.    Perhaps the lapse of time had rendered the giving the note indispensable to save the defendants from a suit.    The creditor might be willing to give delay, but not to suffer the statute to run against his claim.

But it is contended on the part of the defendants, that there is no legal proof that the trustees ever authorized the treasurer to give the note.    The only evidence offered was the records or minutes of the proceedings of the trustees.    It may not be strictly true that they were a corporation or body authorized to keep records or to appoint a certifying officer ; and were the question, whether a copy verified only by the certificate of their secretary was competent, it would be difficult to support it.

But the question is, whether the original memoranda made at the time by one of their number appointed for the purpose, is admissible.

<em>Hayward<br>v.<br>The Pilgrim<br>Society.</em>

They were a public body, established by by-laws legally authorized, and thus indirectly recognised by law. They were empowered to act by vote, and a minority of the whole number, constituting a quorum, might act for and bind the whole. It was their duty to keep written memorials of their acts and not to leave them to the uncertain and varying recollections of different individuals. Their acts are to bind others; they necessarily consist of votes, which should be in writing. It may become important to prove them in court. How shall this be done? by reference to the written evidence, or by the testimony of witnesses? It is very obvious which would be the safest mode.

Had the votes or acts of the trustees been written and signed by each member, it can hardly be doubted that such document would be competent evidence. They authorized one of their number to act for them, and his acts in pursuance of his authority, are as valid as if done by all of them. We are therefore of opinion, that the original minutes of the proceedings of the trustees, whether they may be denominated records or not, are competent evidence. The fact that both of the officers of the board at the time the votes were passed, are dead, may add some strength to this view of the subject.

The proceedings of the trustees being established by competent proof, the general presumption in favor of the regularity of the acts of public officers, applies to them. And although it does not appear who or how many of the trustees were present, it cannot, in the absence of proof, be presumed that less than a quorum acted.

<em>Defendants defaulted.</em>